& Eng. Ency. of Law (2d ed.), 422, the cases are thus summed up: " Water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity. The obligation to pay for the use of water rests either on express or implied contract on the part of the consumer to make compensation for water which he has applied for and received, on the terms and conditions made public."

We are of opinion that the borough of Monaca has the right to impose by ordinance, reasonable rates and charges for the supply of water, furnished by it.

The assignments of error are sustained, and the preliminary injunction granted by the court below is dissolved ; the costs of the proceedings to be borne by the appellees.

---

# Beaumont's Estate.

*Decedents' estates—Will—Signature at end.*
Written matter following the signature to a will, will not invalidate the paper as a will, if such written matter is not testamentary in character.

*Will—Execution—Change of domicile.*
A will of personal property must be executed according to the law of the testator's domicile at the time of his death.

A will executed in New York, and void as a will under the law of that state for want of subscribing witnesses, is valid as a will under the laws of Pennsylvania if it appears that after the execution of the will, testator changed his domicile from New York to Pennsylvania, and died in the latter state.

Argued Oct. 17, 1906. Appeal, No. 30, Oct. T. 1906, by Charles Beaumont et al., from decree of O. C. Butler Co., June T., 1905, No. 16, dismissing appeal from register of wills in estate of Lucius S. Beaumont, deceased. Before MITCH-ELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Appeal from register of wills.
The paper admitted to probate by the register was as follows :

1907.]

" 1901                                                L. Beaumont Cash Estate

" My Luckey Numbers
13026-7-8-9
13030-1-2-5-4-5-6-7
18184-5-6-7-8-9
18190-1-2-3-4-5-6-7-8-9
18200-1-2-3
3352-3
3334
18139-40-1
10846-7
18584-5
20868-9-70
7218-19
5100
4465
4464

50      Feb.      And      August      B      LB      1612

" L. S. Beaumont Oct. 25th, 1901

" It is my desire that my safe and Books go to my brother Except any papers and trust that may belong to my wife and others—My Guns and Fish poles to go to my brothers. All other personal property to my wife. I mean the books in my Safe.

" New York Oct. 25th, 1901

" L. Beaumont

" Oct. 25th      L. Beaumont Estate

" Mrs. Beaumont and myself have an account with the New York Life & Trust Co., 52 Wall St. Balance there this date . . . . . . . . . .      2068.29

" Mrs. Beaumont and myself have a Lock Box, No. 7807 in the Mercantile Safe Deposit Co., in which there are securities to the amount of . . . .      4070.55

" Mrs. Beaumont has a personal Acct. in the Butler County National Bank now amounting to .      197.58
My wife is the only person that can use that Acct. ————

6316.42

" L. Beaumont. ·

" Oct. 25th. I have a personal Acct. in the Seaboard National Bank 20 Broadway, Enough of this

money if any must be used to defray my Funeral Expenses and the balance if any to be given to my wife.

"Cremation is my wish.

"The cash balance in this Acct this date  .  . 1488.95

"Amount  .  .   7825.37

"No one must Disturb or interfere with thease above acct. they belong to my wife Mrs. Nancy J. Beaumont.

"Vey, Resp.
"L. S. Beaumont,
"Oct. 25th, 1901."

PATTON, P. J., specially presiding, after disposing of a question as to domicile of testator.

The next matter that requires attention is the question of law, whether the paper of October 25, 1901, is the valid last will and testament of Lucius S. Beaumont, deceased.

The testator kept a "Journal Cash Book" which is headed on the first page "Cash Acct L. Beaumont et al.," in which the first entry was made February 1, 1890, and the last entry on November 15, 1903, on page 117. The alleged last will and testament offered and admitted to probate, was written on pages 79 and 80 of this book, on October 25, 1901. The date of the last entry immediately before this one, was December 4, 1894, and the date of the next entry after October 25, 1901, is November 4, 1901. The entire entries of the date of October 25, 1901, are offered, for probate as the will, except the entry at the head of page 81 which reads as follows:

"L. S. Beaumont et al.
"1901. ·          Oct. 25   By Balance  .  .  .   7825.37 "

Is said paper invalid as the last will and testament of L. S. Beaumont because not signed at the end thereof as required by the Act of April 8, 1833, sec. 6, P. L. 249? When the above entry on page 81 was made, we do not know except from its date, but we do know that it does not dispose of any of the property of the testator, and its only purpose is to carry forward the balance on page 80 for the convenience of the bookkeeper. We can say of this will as was said of the will

of Elizabeth Phile Stott, by the Supreme Court in Wikoff's Appeal, 15 Pa. 281, where the testator wrote after her signature, "This will was commenced in the year of our Lord 1843 and added to as occasion occurred." In speaking of these words written after the signature of the testator, the Supreme Court said: "The matter in it bore neither on the contents of the will nor on its interpretation. It was not testamentary, and it was no more a part of the will than the label on the back of it."

The authorities are clear that if the testator had disposed of any part of his estate, however small, by words written after his signature, it would have invalidated the will. But such is not the fact in this will.

Is the paper of October 25, 1901, as admitted to probate, testamentary in character? Whatever the form of the instrument is, if it vests no present interest in the donee but only appoints what is to be done after the death of the testator, it is a testamentary instrument: Turner v. Scott, 51 Pa. 126.

Comparing the paper before us with that passed upon by the Supreme Court in Tozer v. Jackson, 164 Pa. 373, we have no doubt that it is testamentary. The interpretation of the paper is for the court. It disposes of all the testator's personal property, and the testimony shows he had no real estate. It is clear that he did not intend to make a present gift of all his personal property, for, if he had, there is no reason why he should not have done so, instead of retaining possession for upwards of two years, and only making the entry in his private journal. He also points out in the paper the specific fund out of which his funeral expenses shall be paid, and expresses a desire as to the disposal of his body after death. Every fact surrounding the transaction shows that the property should not pass in præsenti as a gift, but should only become effective at his death.

As we have heretofore found, Lucius S. Beaumont, at the time he made the paper in dispute, to wit: on October 25, 1901, was domiciled in the state of New York; at the time of his death he was domiciled at Butler, Pa. The Revised Statutes of New York, title "Wills," vol. 3, sec. 8, inter alia, provide in regard to wills: "There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at

the end of the will, at the request of the testator." This provision of the law is not complied with. But it is not necessary to have attesting witnesses to a will in Pennsylvania. By the laws of which state shall this will be governed? Does it speak from the date of its execution or from the date of the death of the testator?

As early as the case of Desesbats v. Berquier, 1 Binn. 336, it was held in Pennsylvania that " A will of personal property must be executed according to the law of the testator's domicile at the time of his death." The court cited many authorities to show that succession to the personal estate, whether by law or the act of the testator, is to be regulated by the law of the country in which he was a domiciled inhabitant at the time of his death, without any regard whatever to the place of birth or death, or the situation of the property at that time. So far as we have been able to find, this case has. never been overruled or· modified, and is decisive of the question now before us. It is cited with approval by Judge DENIO, in Moultrie v. Hunt, 23 N. Y. 394 (court of appeals), where it is held that, ·" The law is that the jurisdiction in which the instrument was signed and attested is of no consequence, but its validity must be determined according to the domicile of the testator at the time of his death." Hence we conclude:

1. That the place of domicile of Lucius S. Beaumont at the time of his death, to wit: November 29, 1903, was' not the city and state of New York, but was the borough of Butler, Pa.

3. The paper writing of October 25, 1901, is the valid last will and testament of Lucius S. Beaumont, deceased.

4. That the place of domicile of Lucius S. Beaumont, deceased, on October 25, 1901, was New York city, N. Y.

And now, October 20, 1905, the decree of the register admitting to probate the last will and testament of Lucius S. Beaumont, dated October 25, 1901, is sustained and affirmed, and the appeal from said decree is refused and dismissed at the cost of the petitioners.

*Error assigned* was the decree of the court.

*T. C. Campbell*, with him *Charles W. Fuller*, *Wm. Findlay*

*Brown, Walter Lyon, Charles H. McKee, H. Walton Mitchell* and *Alex. A. Patterson,* for appellants.

*Lev. McQuistion,* with him *John H. Wilson* and *C. L. McQuistion,* for appellee.

PER CURIAM, January 7, 1907:
Decree affirmed on the opinion of the court below.

---

# Wilkes *v.* Buffalo, Rochester & Pittsburg Railway Company, Appellant.

<div style="float:right">216 355<br>f222 604</div>

*Negligence—Railroads—Passenger—Locomotive engineer—Master and servant.*

In an action against a railroad company to recover damages for the death of plaintiff's husband, it appeared that the deceased prior to his death had successfully passed an examination for the position of locomotive engineer on the defendant's railroad. Wishing to inform himself more particularly about a section of the road where the signals had been changed, he secured an employee's pass, and written permission from the company to ride on any of the locomotives of the division. He took the trip voluntarily, and without any compensation. In the course of the journey he first rode in one of the cars, and later on took his place in the locomotive cab. While riding there, the train left the tracks owing to the negligence of the engineer in charge, and the deceased was killed. *Held,* (1) that the question whether the deceased was or was not a passenger was for the jury, and (2) that a verdict and judgment for plaintiff should be sustained.

Argued Oct. 17, 1906. Appeal, No. 146, Oct. T., 1906, by defendant, from judgment of C. P. Butler Co., June T., 1905, No. 74, on verdict for plaintiff in case of Annie Wilkes v. Buffalo, Rochester & Pittsburg Railway Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband.

· Verdict and judgment for $10,286.67. Defendant appealed.